UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

─────────────────────────────────────────────

ANDROME LEATHER CORPORATION,

                    Plaintiff,

v.                                                    6:05-CV-0733
                                                      (GTS/GHL)
CITY OF GLOVERSVILLE; ZONING BOARD OF
APPEALS OF THE CITY OF GLOVERSVILLE;
D. ROBERT ROBBINS, JR.; THOMAS RENDA;
FRANCES MOSCONNI; MARGARET RALBOVSKY;
GARRISON SEELOW; DEBORAH ASHE;
KELLY OCTIGAN; KAREN SMITH;
MICHAEL CAPPARELLO; ABRAHAM SEROUSSI;
COMMON COUNCIL OF CITY OF GLOVERSVILLE;
ANTHONY J. CARUSO; MARIE A. SCHUTZ;
FRANK A. CLEMENTE; ANTHONY P. CHRISTIANO;
PAUL E. REID; and MARY LOUISE R. MELE,

                    Defendants.

─────────────────────────────────────────────

APPEARANCES:                              OF COUNSEL:

OLIVER & OLIVER                           LEWIS B. OLIVER, JR., ESQ.
  Counsel for Plaintiff
156 Madison Avenue
Albany, NY 12202

MURPHY BURNS BARBER & MURPHY, LLP         PETER G. BARBER, ESQ.
  Counsel for Defendants
226 Great Oaks Boulevard
Albany, NY 12203

HON. GLENN T. SUDDABY, United States District Judge

## DECISION and ORDER

Currently before the Court in this civil rights action filed by Androme Leather

Corporation ("Plaintiff") is a motion for summary judgment filed by the City of Gloversville

("City"), the Zoning Board of Appeals of the City of Gloversville ("ZAB"), D. Robert Robbins,

Jr., Thomas Renda, Frances Mosconni, Margaret Ralbovsky, Garrison Seelow, Deborah Ashe,

Kelly Octigan, Karen Smith, Michael Capparello, Abraham Seroussi, Common Council of the

City of Gloversville, Anthony J. Carusa, Marie A. Schutz, Frank A. Clemente, Anthony P.

Christiano, Paul E. Reid, and Mary Louise R. Mele (collectively, "Defendants").  (Dkt. No. 79.)

For the reasons set forth below, Defendants' motion is granted.

## I.      BACKGROUND

### A.      Plaintiff's Claims

Generally, liberally construed, Plaintiff's Complaint alleges that Defendants violated

Plaintiff's equal protection rights under the Fourteenth Amendment by selectively, and without

any rational basis, treating Plaintiff differently from other similarly situated individuals (or

entities) when Defendants denied Plaintiff's building permit application (or zoning variance) to

permit it to add a certain manufacturing process to its plant, while permitting a competitor to

engage in the same manufacturing process in its nearby plant.  (*See generally* Dkt. No. 1 [Plf.'s

Compl.].)[1]  Familiarity with the particular factual allegations supporting this claim in Plaintiff's

Complaint is assumed in this Decision and Order, which is intended primarily for review by the

parties.  (*Id*.)

---

[1]      Plaintiff's Complaint also alleges that Defendants violated the Takings Clause of
the Fifth Amendment.  (Dkt. No. 1.)  However, this claim was dismissed by District Judge David
N. Hurd in a Decision and Order on November 29, 2005, for failure to state a claim upon which
relief can be granted, pursuant to Fed. R. Civ. P. 12(b)(6).  (Dkt. No. 12.)

B.    **Undisputed Material Facts**

The following material facts are undisputed by the parties.  (*Compare* Dkt. No. 79,

Attachment 1 [Defs.' Rule 7.1 Statement] *with* Dkt. No. 90 [Plf.'s Rule 7.1 Response].)

Plaintiff operates a leather processing facility in the City of Gloversville.  The leather-

manufacturing process includes (1) "beaming" (i.e., removing hair from animal hide), (2)

"pickling" (i.e., preserving the hide), (3) tanning (i.e., turning hides into preserved pieces of

leather using oils and chemicals), (4) coloring (i.e., dying the leather), and (5) finishing (i.e.,

applying paint to the leather).

Since March 1981, Plaintiff has been engaged in the tanning and finishing of animal

hides, but not beaming.  In 1988, the zoning district in which Plaintiff's facility is located was re-

zoned "M-1."  As a result, leather processing (including beaming) was neither permitted nor

allowed as a matter of right.  However, facilities involved in leather manufacturing before the

implementation of the restriction were permitted to continue their "pre-existing noncomforming

leather processing uses."[2]

JFB Industries, Inc. ("JFB") is a leather processing facility located in the City of

Gloversville, a short distance from Plaintiff, and in the same M-1 zoning district.  JFB was

established in 1968.  Upon establishment, JFB was a full-range leather processing facility,

involved in every aspect of the manufacturing process, including beaming.

On October 10, 2000, Plaintiff submitted a building permit application to Defendant D.

Robert Robbins, Jr., who was then the City Building Inspector, "to add beaming process to

present finishing and tanning plant."  On October 12, 2000, Defendant Robbins denied Plaintiff's

_____

[2]    (Dkt. No. 1, at ¶¶ 36, 50, 51.)

building permit application on the grounds that leather treatment was not allowed in an M-1

zone.  Plaintiff subsequently applied to Defendant ZBA for a review of Defendant Robbins's

interpretation of the zoning ordinance and, in the alternative, for a use variance to conduct

beaming.  Defendant ZBA held hearings on Plaintiff's interpretation appeal and use variance

application on December 6, 2000, January 3, 2001, February 7, 2001, and January 2, 2002.  In

advancing the argument that Plaintiff should be allowed to engage in beaming at ZBA meetings,

Plaintiff's President pointed out that JBF, which was located directly across the street from

Plaintiff's plant, was engaged in beaming.

Defendant ZBA ultimately upheld Defendant Robbins's interpretation of the zoning

ordinance, and denied Plaintiff's use variance application.  Plaintiff subsequently appealed

Defendant ZBA's denial of his variance application by filing an Article 78 Proceeding in the

Supreme Court of New York, Fulton County.  The Supreme Court, followed by the Appellate

Division, Third Department, upheld Defendant ZBA's decision.  Plaintiff's request to appeal the

matter to the New York Court of Appeals was denied.

In September 2004, JFB submitted a request to the Defendant Common Council for a tax

installment plan under NYS Real Property Law § 1184.  At the Common Council's public

meeting, the Common Council approved JFB's tax installment plan upon the finding that it

would protect employment for 37 to 50 workers at JFB's facility.  Plaintiff never submitted its

own request for a tax installment plan.

Familiarity with the remaining undisputed material facts of this action, as well as the

disputed material facts, as set forth in the parties' Rule 7.1 Statement and Rule 7.1 Response, is

assumed in this Decision and Order, which (again) is intended primarily for review by the

parties.  (*Id.*)

C.       Parties' Arguments on Defendants' Motion for Summary Judgment

1.       Defendants' Initial Moving Papers

Generally, in support of their motion for summary judgment, Defendants argue as

follows: (1) Plaintiff's "class of one" claim cannot survive summary judgment because Plaintiff

has failed to establish either that Plaintiff and JFB had a "high degree of similarity," or that

Defendants intentionally treated Plaintiff differently from JFB; (2) Plaintiff has failed to

establish that a majority of the members of either the ZBA or the Common Council had an

unconstitutional motive for rendering their respective decisions; (3) Plaintiff's official capacity

claims lack merit because it is well settled that a claim against an individual in her official

capacity is nothing more than a claim against the municipality itself; (4) Plaintiff's claim against

the City lacks merit because a municipality cannot be held liable under a theory of *respondeat*

*superior*; and (5) the individual Defendants are protected from liability as a matter of law based

on either the doctrine of absolute immunity of the doctrine of qualified immunity.  (*See generally*

Dkt. No. 79, Attachment 32 [Defs.' Memo. of Law].)

2.       Plaintiff's Response

Generally, in its response to Defendants' motion for summary judgment, Plaintiff argues

that Defendants' motion should be denied because (1) there is evidence from which a rational

factfinder could conclude that Plaintiff and JFB are sufficiently similarly situated, and that

Defendants intentionally treated Plaintiff differently from JFB when they denied Plaintiff's

request for a beaming variance after granting JFB's request, and (2) Defendants Robbins, ZBA,

Seroussi, and City are not entitled to a qualified immunity defense based on the current record.

(*See generally* Dkt. No. 86 [Plf.'s Reply Memo. of Law].)

More specifically, the crux of Plaintiff's argument is that, at approximately the time of its

request to engage in beaming, Defendant Robbins, in a letter to a prospective buyer of JFB

inquiring as to whether JFB would be permitted to "resume" beaming, indicated that JFB had a

"grandfathered" right to continue beaming as long as it did not cease beaming for more than one

year after it was deemed exempt from the zoning restriction. (*Id*. at 8.) Plaintiff argues that

Defendant Robbins knew when he wrote this letter that JFB had previously gone more than a

year without beaming, and therefore, JFB had lost its grandfathered right to beam. (*Id*. at 8-11.)

As a result, Plaintiff argues that, by informing a potential purchaser that JFB had the right to

continue beaming, and by not requiring JFB to undergo the same application process as Plaintiff,

Defendant Robbins intentionally treated the similarly situated leather-manufacturing facilities

differently. (*Id*. at 8-11.)

### 3.     Defendants' Reply

Generally, in their reply to Plaintiff's response, Defendants argue as follows: (1) the

claims against Defendants Robbins, ZBA, the Common Council, Seroussi and the City lack

merit; and (2) the individual Defendants are entitled to immunity. (*See generally* Dkt. No. 92

[Defs.' Reply Memo. of Law].)

## II.    RELEVANT LEGAL STANDARDS

### A.     Legal Standard Governing Motions for Summary Judgment

Because the parties to this action have demonstrated, in their memoranda of law, an

accurate understanding of the legal standard governing motions for summary judgment, the

Court will not recite that  well-known legal standard in this Decision and Order, but will direct

the reader to the Court's recent decision in *Pitts v. Onondaga County Sheriff's Dep't*,

04-CV-0828, 2009 WL 3165551, at *2-3 (N.D.N.Y. Sept. 29, 2009) (Suddaby, J.), which

accurately recites that legal standard.

**B.      Legal Standards Governing Plaintiff's Claims**

Because the parties to this action have demonstrated, in their memoranda of law, an accurate understanding of the relevant points of law contained in the legal standards governing Plaintiff's claims in this action, the Court will not recite, in their entirety, those legal standards in this Decision and Order, which (again) is intended primarily for review by the parties.  (*See* Dkt. No. 79, Attachment 32 [Defs.' Memo. of Law]; Dkt. No. 86 [Plf.'s Reply Memo. of Law]; Dkt. No. 92 [Defs.' Reply Memo. of Law].)

**III.    ANALYSIS**

Based on a careful reading of the parties' motion papers, the Court finds it appropriate to address the following three issues in order to decide Defendants' motion: (1) whether Plaintiff and JFB had a "high degree of similarity"; (2) whether Defendants intentionally treated Plaintiff differently from JFB out of malice or with no rational basis; and (3) whether Plaintiff's claims against the Common Council lack merit on alternative grounds.

**A.      Whether Plaintiff and JFB Had a "High Degree of Similarity"**

As indicated above in Part I.C.1. of this Decision and Order, Defendants argue that JFB and Plaintiff did not have the threshold "high degree of similarity" required for Plaintiff's equal protection claim to survive summary judgment.  Based on the current record, the Court accepts Defendants' argument for three reasons.

First, although Plaintiff and JFB are leather-manufacturing companies located in the same zoning district, unlike JFB, Plaintif had never engaged in beaming prior to the 1988 re-zoning of the district in which its facility was located.  As a result, while Plaintiff was required to obtain permission from the City Building Inspector before it could begin beaming, JFB was required only to beam once a year in order to retain its right to continue beaming.

Second, and relatedly, because JFB had a "grandfathered" right to beam, it was up to the City Inspector to determine whether JFB had forfeited that right. In making this determination, the Zoning Code did not require the City Inspector to investigate the facility. Therefore, unless the City Inspector had reason to believe that JFB was not beaming, the inspector was afforded a degree of discretion to assume that JFB maintained its beaming operation. Conversely, because Plaintiff requested permission to beam for the first time after its district was re-zoned, Plaintiff was required to apply for a permit to restructure its interior (to be able to beam). In addition, and because Plaintiff's permit request was denied, Plaintiff was required to apply for a variance. In its variance application, Plaintiff was required to provide evidence "that applicable zoning regulations and restrictions have caused unnecessary hardship." Under these circumstances, neither the City Inspector nor the ZAB was afforded discretion to assume that Plaintiff was entitled to beam; rather, Plaintiff had the burden of establishing its entitlement to beam.

Third, even assuming that JFB did not beam for more than a year (thus requiring JFB to forfeit its grandfathered right to beam and re-apply with the City Inspector for the right to beam), there is no admissible record evidence establishing that Plaintiff and JFB were financially similar. Indeed, the available record evidence indicates that Plaintiff was denied its variance, not because it was requesting permission to beam for the first time after its district was re-zoned, but because in its application, Plaintiff's financials reflected that it was operating at a profit absent beaming. Stated another way, Plaintiff has failed to introduce any admissible record evidence establishing that JFB was operating at a profit during the time period in which it was allegedly not beaming, such that JFB would have been denied a variance had it been required to apply for one.

For these reasons, Plaintiff's equal protection claim is dismissed.

8

**B.      Whether Defendants Intentionally Treated Plaintiff Differently From JFB
           Out of Malice or With No Rational Basis**

Even assuming that Plaintiff and JFB had a high degree of similarity, Plaintiff's equal

protection claim survives summary judgment only if Plaintiff also demonstrates that Defendants

intentionally treated Plaintiff and JFB differently, either out of malice or with no rational basis.

*Spiegel v. Adirondack Park Agency*, 06-CV-0203, 2009 WL 3049720, at \*8 (N.D.N.Y. Sept. 18,

2009) (Sessions, J.); *Assoko v. City of New York*, 539 F. Supp.2d 728, 735 (S.D.N.Y. 2008) ("In

the Second Circuit, to state a 'class of one' claim under *Olech*, Plaintiffs must allege: (1) that

they were intentionally treated differently from other similarly situated individuals; and (2) that

the disparate treatment was either (a) 'irrational and wholly arbitrary' or (b) motivated by

animus.").

**1.      Whether Plaintiff Was Intentionally Treated Differently From JFB**

"Knowledge of [a] violation[]s is generally a prerequisite for intentionally different

treatment."  *Spiegel*, 2009 WL 3049720, at \*8 (citing *LaTrieste Rest. v. Vill. of Port Chester*, 188

F.3d 65, 69-70 [2d Cir. 1999]).  Accordingly, "[a] mere failure to pursue other violations is not a

basis for a selective prosecution claim."  *Id*. (citation omitted).  Having said that, evidence that a

City Inspector consciously chose not to investigate or pursue a zoning violation by one

individual, while choosing to investigate zoning violations by other similarly situated individuals

could establish selective treatment.  *See Spiegel*, 2009 WL 3049720, at \*8 (finding that, where a

park agency found a homeowner constructing a home to be in violation of certain development

permits, evidence of the park agency's conscious decision not to investigate potential permit

violations by other similarly situated homeowners "could establish that [plaintiffs] were treated

selectively").

Here, Plaintiff has introduced admissible record evidence from which a rational

factfinder could conclude that Defendant Robbins (1) was aware that JFB was not beaming for

more than a year, and (2) failed to investigate this fact.  However, Plaintiff has failed to

introduce admissible record evidence establishing that, while consciously choosing not to

investigate JFB for an existing zoning violation, Defendant Robbins found Plaintiff (or another

similarly situated leather manufacturer) to be in violation of a particular zoning rule.  Instead,

Plaintiff tenuously argues that, while consciously choosing not to investigate JFB, Defendant

Robbins denied Plaintiff's request for a permit to restructure the interior of its facility.  Such an

argument is without merit because it fails to consider the undisputed fact that, in denying

Plaintiff's request, Defendant Robbins did not investigate Plaintiff for an existing zoning

violation (or even act spontaneously).[3]  Rather, the available record evidence indicates that

Plaintiff sought Defendant Robbins's permission to begin beaming, and that, in responding to

that request for permission, Defendant Robbins considered whether granting such permission

would cause Plaintiff to violate the City's zoning ordinances.  Based on these limited facts, the

Court finds that Plaintiff has failed to establish that it was intentionally treated differently from

JFB.

### 2.   Whether the Disparate Treatment Was Irrational and Wholly Arbitrary

"In the zoning context, a government decision regulating a landowner's use of his

property offends substantive due process if the government action is arbitrary or irrational."

---

[3]       The Court notes that the ZAB considered Plaintiff's variance request only after Defendant Robbins denied the request, and the ZAB never considered any facts regarding JFB. Because the ZAB did not in any way rule on any behavior on the part of JFB, it cannot be rationally concluded that the ZAB even compared Plaintiff and JFB, let alone intentionally treated them differently.

*Southview Assocs., Ltd. v. Bongartz*, 980 F.2d 84, 102 (2d Cir. 1992) (citations omitted).  "A

zoning board's decision can be considered irrational only when the board acts 'with no

legitimate reason for its decision.'"  *Harlen Assocs. v. Inc. Village of Mineola,* 273 F.3d 494, 500

(2d Cir. 2001) (holding that a zoning board's denial of special use permit for construction of a

convenient store was rational because it was based on traffic concerns and concern for the safety

of children at a nearby school) (citations omitted).  Moreover, "a municipal zoning ordinance is

[generally] presumed [to] be valid, and will not be held unconstitutional if its wisdom is at least

fairly debatable and it bears a rational relationship to a permissible state objective."  *Greene v.*

*Town of Blooming Grove*, 879 F.2d 1061, 1063 (2d Cir. 1989) (citing *City of Cleburne v.*

*Cleburne Living Center*, 473 U.S. 432, 440 [1985]).  "In applying th[e]se principles . . . ,

defendants' subjective motivation in enacting the [restriction] is irrelevant."  *Ecogen, LLC v.*

*Town of Italy*, 438 F. Supp.2d 149, 157 (W.D.N.Y. 2006) (citations omitted).  As a result, "[i]n

order to prevail on its substantive due process claim, [Plaintiff] must establish that the

[restriction], at least insofar as it prohibits [Plaintiff'] construction of a [beaming station], bears

no rational relationship to any legitimate governmental purpose."  *Ecogen, LLC*, 438 F. Supp.2d

at 157.

As an initial matter, the re-zoning of Plaintiff's district, *inter alia*, prohibited the

development of new, and expansion of existing, leather-processing facilities.  Although the

parties do not challenge the legitimacy of the re-zoning of Plaintiff's district, it is clear to the

Court, based on the current record, that the re-zoning was rationally related to the City's

legitimate goal of reducing odors and pollutants that are emitted from leather-manufacturing

facilities.

Based on the current record (and the legitimacy of the re-zoning of Plaintiff's district),

the Court finds that it cannot be rationally concluded that Plaintiff was arbitrarily denied (1) a

permit to restructure its interior, or (2) a variance.  Defendant Robbins denied Plaintiff's request

for a permit to restructure the interior of its facility because such restructuring would extend the

scope of Plaintiff's permitted nonconforming manufacturing facility, in violation of the zoning

code.  The ZAB upheld Defendant Robbins's denial of the permit request for the same reasons

that Defendant Robbins denied the request.  In addition, the ZAB denied Plaintiff's request for a

variance because Plaintiff was unable to demonstrate the requisite undue financial burden

associated with not being granted the variance.  Moreover, the ZAB's denial of Plaintiff's

variance request was upheld by a New York State Supreme Court and the Appellate Division,

who expressly stated that it was rational for the ZAB to deny Plaintiff's request based on the

financial information that Plaintiff presented to the ZAB.

As a result, even assuming that the Court could conclude that Defendant Robbins

intentionally treated JFB differently from Plaintiff, the Court concludes that Plaintiff has failed

to introduce admissible record evidence establishing that it was irrational and wholly arbitrary

for (1) Defendant Robbins to (a) deny Plaintiff's permit request, and (b) not investigate JFB's

facility,[4] and (2) the ZAB to subsequently affirm Defendant Robbins's denial of the permit

request and deny Plaintiff's variance application.

---

[4]        "Mere failure to prosecute other offenders is not a basis for a finding of denial of
equal protection." *LeClair v. Saunders*, 627 F.2d 606, 608 (2d Cir. 1980); *accord*, *Spiegel*, 2009
WL 3049720, at *13 (finding that the park agency did not act irrationally when it chose to bring
an enforcement action against the plaintiffs, and not other homeowners who may have been in
violation of the development permit because, regardless of the conduct of the other homeowners,
the plaintiffs home construction violated development permits, and the agency's "conduct [in
initiating an enforcement action] was rationally related to the work of the [a]gency to regulate
development in the Adirondack Park region").

### 3.   Whether the Disparate Treatment Was Motivated By Personal Animus

"The branch of equal protection law that protects individuals from unequal treatment motivated by 'malicious or bad faith intent to injure' provides protection from adverse governmental action that is not motivated by 'legitimate governmental objectives.'" *Bizzarro v. Miranda*, 394 F.3d 82, 87 (2d Cir. 2005) (quoting *Esmail v. Macrane*, 53 F.3d 176, 180 [7th Cir. 1995]).  "This standard must be scrupulously met; a reasonable jury must be able to conclude that [Defendants'] action w[ere] a spiteful effort to get [Plaintiff] for reasons wholly unrelated to any legitimate state objective." *Spiegel*, 2009 WL 3049720, at *9 (internal quotation marks and citations omitted).

Here, Plaintiff has failed to even speculate, let alone introduce admissible record evidence establishing, that either Defendant Robbins, Defendant ZAB, or any individual on the ZAB acted out of personal dislike for Plaintiff in denying Plaintiff's permit and variance requests.  As a result, the Court finds that Plaintiff has failed to introduce admissible record evidence of impermissible motive.

For these alternative reasons, Plaintiff's equal protection claim is dismissed.

### C.   Whether Plaintiff's Claims Against the Common Council Lack Merit on Alternative Grounds

In its memorandum of law, Plaintiff fails to address Defendants' argument that, because the Common Council members were not personally involved in prohibiting Plaintiff's beaming operations, the claims against them must fail as a matter of law.  In addition, Plaintiff fails to address Defendants' argument that the Common Council's decision to grant JBF's tax-abatement plan was in the City's best interests, and does not amount to an unconstitutional violation of Plaintiff's equal protection rights.  As a result, Defendants' burden with regard to the dismissal

13

of Plaintiff's claims against the Common Council and its members is lightened such that, in

order to succeed on this request, Defendants need show only that their request has facial merit.[5]

Based on their motion papers, the Court finds that Defendants have met this lightened

burden.  In any event, the Court finds that Defendants' argument would survive the heightened

scrutiny appropriate on a contested motion for the reasons stated in Defendants' memorandum of

law.  (*See* Dkt. No. 79, Attachment 32, at 17-34.)

As a result, Plaintiff's claims against the Common Council and its members are

dismissed on these alternative grounds.

### D.      Whether Defendants Are Entitled to Immunity

Defendants argue that they are entitled to immunity from liability (whether it the

immunity be qualified or absolute in nature) regarding Plaintiff's claims.  Because the Court has

already determined that Plaintiff's equal protection claims cannot survive summary judgment,

the Court need not, and does not, address Defendants' immunity argument (or any other

arguments not addressed in this Decision and Order, e.g., Defendants' official-capacity

---

[5]       *See* N.D.N.Y. L.R. 7.1(b)(3) ("Where a properly filed motion is unopposed and the Court determines that the moving party has met its burden to demonstrate entitlement to the relief requested therein, the non-moving party's failure to file or serve any papers as this Rule requires shall be deemed as consent to the granting or denial of the motion, as the case may be, unless good cause is shown."); *Rusyniak v. Gensini*, 07-CV-0279, 2009 WL 3672105, at *1 n.1 (N.D.N.Y. Oct. 30, 2009) (Suddaby, J.) (citing cases that stand for the proposition that, where plaintiffs do not respond to defendants' argument made in their summary judgment motion, plaintiffs are deemed to have consented to defendants' argument, and thus defendants must only satisfy their "modest threshold burden" of demonstrating entitlement to the relief requested in their motion for summary judgment); *accord, Cossey v. David,* 04-CV-1501, 2007 WL 3171819, at *4 & nn. 21, 22 (N.D.N.Y. Oct. 29, 2007) (Lowe, M.J. adopted by Scullin, J.) (collecting cases); *Niles v. Nelson*, 72 F. Supp.2d 13 (N.D.N.Y. 1999) (McAvoy, J.) (holding that when a party does not respond to a portion of the opposing party's motion, they indicate that they consent to the granting of summary judgment with respect to that portion of the motion or have abandoned the claim); *cf. Di Giovanna v. Beth Isr. Med. Ctr.*, 08-CV-2750, 2009 WL 2870880, at *10 n.108 (S.D.N.Y. Sept. 8, 2009) (citing cases for proposition that plaintiff's failure to respond to argument made in summary judgment motion as to why certain claim should be dismissed constitutes abandonment of claim).

argument, and its *respondeat superior* argument).

ACCORDINGLY, it is

ORDERED that Defendants' motion for summary judgment (Dkt. No. 79) is

GRANTED; and it is further

ORDERED that Plaintiff's Complaint (Dkt. No. 1) is DISMISSED.

Dated: January 14, 2010
       Syracuse, New York

Hon. Glenn T. Suddaby
U.S. District Judge